IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO CLC AND ITS LOCAL UNION NO. 216M, <br><br>PLAINTIFFS, <br><br>V. <br><br>JOHNS MANVILLE, <br><br>DEFENDANT. | § § § § § § § § § § § § § § § § § § | CIVIL CASE NO. 3:22-CV-2875-BK |

**MEMORANDUM OPINION**

Before the Court are the parties' cross-*Motions for Summary Judgment*. Doc. 34; Doc. 38. For the reasons stated here, Plaintiffs' motion is **GRANTED** and Defendant's motion is **DENIED**.

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. Defendant Johns Manville operates a manufacturing facility in Cleburne, Texas. Doc. 1 at 2, ¶ 4; Doc. 8 at 1, ¶ 4. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC and its Local Union No. 216M (collectively the "Union") represents employees at the plant. Doc. 1 at 2, ¶ 3; Doc. 8 at 1, ¶ 3. The parties have a collective bargaining agreement in place, which is effective from February 22, 2022, through February 22, 2026. Doc. 40-1 at 1-51.

The collective bargaining agreement includes a Recognition Clause at Article 4, Section 1, which provides: "The Company recognizes the [Union] as the exclusive bargaining representative of all the production, maintenance, warehouse and shipping employees for the purpose of collective bargaining with respect to rates of pay, wages, hours of work and other conditions of employment."  Doc. 40-1 at 5.

Article 10 of the collective bargaining agreement, titled "Sub-Contracting," provides:

> The Union shall have jurisdiction over all maintenance, repair, and other work as defined in Article 4 Section 1. The Company agrees not to abuse the practice of using outside contractors. When the Company determines that it is necessary to subcontract bargaining unit work it will notify the Union by sending an email to the Union Business Committee indicating the work to be done and the department that it will be done in.

Doc. 40-1 at 8-9.

Article 26 of the collective bargaining agreement, titled "Grievance Procedure," states that the purpose of Article 26 "is to provide an orderly method for the settlement of all disputes." Doc. 40-1 at 33.  It provides a five-step grievance procedure for the settlement of disputes, with arbitration as the last step.  Doc. 40-1 at 33-36.  The contractual grievance and arbitration procedure applies to "any dispute involving the interpretation or alleged violation of the terms of this Agreement" that "occur[s] between the Company and any employee and/or the Union." Doc. 40-1 at 33.

Between January 2022 and March 2022, Local 216M filed four grievances protesting Johns Manville's use of outside contractors to perform bargaining unit work without the contractually required notice to the Union; each grievance asserted a violation of Article 10 of the parties' collective bargaining agreement; and each requested a remedy in the form of wages

payable to bargaining unit employees who would have performed the work, but for Johns Manville's use of outside contractors. Doc. 40-1 at 52-57.

The grievances were processed through the contractual grievance procedure. In July 2022, Johns Manville denied the grievances at Step 4 "due to untimely, waived by the Union, and otherwise denied." Doc. 36-1 at 73-76. In September 2022, the Union appealed the grievances to arbitration. Doc. 36-1 at 82. The Union requested a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). The panel was sent to the parties on October 20, 2022. Doc. 36-1 at 85-114. Before Johns Manville received the FMCS panel, it took the position that the grievances were "not arbitrable" and rejected the Union's request for arbitration. Doc. 36-1 at 117. Its stated reasons for its refusal to arbitrate were that the grievances were "un[]timely" and "not substantively arbitrable as there in nothing in the collective bargaining agreement that provides for the remedy the Union seeks." Doc. 36-1 at 117-18. After receiving the panel of arbitrators from FMCS, Johns Manville reiterated its position that the grievances were not arbitrable and stated that it would not arbitrate the grievances absent an order from a federal court to do so. Doc. 36-1 at 119-20.

In December 2022, the Union filed this suit pursuant to the Labor Management Relations Act ("LMRA") § 301(a), as amended, 29 U.S.C. § 185(a), seeking a judgment compelling Johns Manville to arbitrate the four grievances under the provisions the CBA, as well as an award of reasonable attorney's fees and costs. *See* Doc. 1, passim. Through cross-motions for summary judgment, the parties now seek the Court's ruling on these matters.

## II. APPLICABLE LAW

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

## III. PARTIES' ARGUMENTS AND ANALYSIS

The Union argues the dispute is subject to arbitration, as the collective bargaining agreement features a broad arbitration clause, the grievances allege a violation of Article 10 of the agreement, and national labor policy favors dispute resolution through arbitration. *See generally* Doc. 34.[1] Johns Manville argues that "the grievances are not arbitrable as the Union

---

[1] The Union also moved for summary judgment to compel arbitration on whether its request for arbitration of the grievances was timely. Doc. 34 at 1-2. In its cross-motion for summary judgment, Johns Manville informs the Court that it is not moving for summary judgment on this issue. Doc. 39 at 3, note 2. And, in its response to the Union's motion, it states that it "has not moved for summary judgment on the timeliness issue, and the Court need not address that issue." Doc. 49 at 2. For these reasons, the Court does not address the matter of whether the Union's request for arbitration was timely.

4

seeks a remedy that is not provided for under the CBA." Doc. 39 at 1. The motions will be addressed together.

### A. Arbitrability of the Grievances

Determining substantive arbitrability is a question for the Court. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination."); *see also Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 200 (1991) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation omitted).

In determining the substantive scope of the agreement, the Court is not weighing in on the merits of the dispute. *AT & T Techs., Inc.*, 475 U.S. at 649. Even a frivolous claim must be decided by an arbitrator if the parties' contract governs the dispute. *Id.* at 649-50. "Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). In the face of a broad arbitration clause, a presumption of arbitrability arises. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

The parties' collective bargaining agreement includes a broad arbitration clause, which applies to applies to "any dispute involving the interpretation or alleged violation of the terms of this Agreement" that "occur[s] between the Company and any employee and/or the Union." Doc. 40-1 at 33.

The Union takes the position that Johns Manville violated a specific provision of the collective bargaining agreement, namely Article 10, by using outside contractors to perform bargaining unit work without the contractually required notice to the Union. Doc. 40-1 at 52-57. Johns Manville takes the position that it did not violate Article 10 of the CBA. Doc. 36-1 at 73-76. On the face of the CBA, it is clear that the claims asserted—using subcontractors for bargain unit work without notice—is prohibited by Article 10 of the collective bargaining agreement. Doc. 40-1 at 8-9. Further, the arbitration process for the arbitration of grievances provides for arbitration of grievances "involving the interpretation or alleged violation of the terms of [the] Agreement." Doc. 40-1 at 33. Thus, the collective bargaining agreement required that the Union's assertions of a violation of Article 10 be decided by an arbitrator. *See, e.g.*, *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343-44 (5th Cir. 1987) (ordering arbitration where two grievances alleged that the employer had violated Article XX, Section 1 of the parties' CBA, and another grievance alleged that the employer had violated Article III, Section 6 of the CBA).

Johns Manville, however, contends that the grievances are not arbitrable solely because "there is nothing in the entire CBA which provides for any substantive remedy for the failure to provide notice of subcontractor work, let alone the specific substantive relief that the Union seeks – pay for all workers who were allegedly displaced by the contractors." Doc. 39 at 5.

The Court is unpersuaded by Johns Manville's argument. First, Johns Manville does not cite to any case where a court declined to compel arbitration because the contract did not provide for the remedy requested when, as here, the underlying dispute was covered by the contractual grievance and arbitration provision. And, the state court cases from New York and Delaware upon which it relies are inapposite for the reasons set forth by the Union in its reply brief. *See* Doc. 50 at 3-4. Second, the Court of Appeals for the Fifth Circuit has long held that "whether it is thought to be a part of the substantive right or more a part of the grievance procedure, in the absence of clearly restrictive language, great latitude must be allowed in fashioning the appropriate remedy constituting the appropriate remedy constituting the arbitrator's decision." *Lodge No. 12, Int'l Ass'n of Machinists v. Cameron Iron Works, Inc.*, 292 F.2d 112, 119 (5th Cir. 1961) (cleaned up); *id.* at 117 (ordering arbitration and observing that "[w]hether the contract does or does not give rise to an obligation on the part of the employer to [pay the remedy sought] is a question of contract interpretation" and that "[w]hether the moving party is right or wrong is a question of contract interpretation for the arbitrator"); *see also United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) (discussing arbitrator's flexibility to order remedies beyond those specifically provided for in the contract).

Also, the prohibition in the collective bargaining agreement against "add[ing] to, subtract[ing] from, or alter[ing] the terms of this Agreement," Doc. 40-1 at 36, does not prohibit an arbitrator from issuing a remedy that the arbitrator deems necessary to compensate for a breach of the agreement, let alone bar arbitration of the grievances. *See Enterprise Wheel & Car Corp.*, 363 U.S. at 598 (enforcing an award of "reinstatement and back pay up to the date [the grievants] were returned to work," minus a 10-day suspension, even though the contract did

7

not specifically provide for such a remedy); *United Steelworkers v. U.S. Gypsum Co.*, 492 F.2d 713, 730 (5th Cir. 1974) (enforcing monetary remedy for breach of contractual wage reopener and holding that this remedy, rather than changing or adding to the parties' agreement, "merely represents an attempt to make the union whole for the damage suffered as a result of Gypsum's breach of the collective bargaining agreement").

A challenge to the arbitrator's grant of relief as ultra vires customarily arises via a post-arbitration motion to vacate the arbitration award.   9 U.S.C. § 10 (district court may vacate award where arbitrator exceeds his power); 29 U.S.C. § 185(a).   Federal courts are free to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement.   *Container Prods., Inc. v. United Steelworkers of Am.*, 873 F.2d 818, 820 (5th Cir.1989). "Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy."   *Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989) (citation omitted).

For these reasons, the Court **ORDERS** arbitration of the four grievances, leaving it to an arbitrator to determine what, if any, remedy shall be ordered in the event the arbitrator finds that Johns Manville has breached the parties' collective bargaining agreement.   Following any arbitration award, Johns Manville is free to challenge the award as outside the jurisdictional prerequisites of the collective bargaining agreement.   See 9 U.S.C. § 10.

### B. Attorney's Fees

In its Motion for Summary Judgment, the Union contends that it is entitled to attorney's fees because Johns Manville's "refusal to arbitrate it without justification, and [its] repeated

violations of its obligations regarding grievance arbitration show that [it] is acting in bad faith." Doc. 35 at 4-5. The Union points to other litigation with Johns Manville in support of its claim for fees, arguing "[t]his is the second time in two years JM has refused to arbitrate grievances, necessitating a lawsuit to compel arbitration." Doc. 35 at 15 (citing *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO·CLC and Local Union No. 216M v. Johns Manville*, No. 3:21-cv-00502-B (N.D. Texas) (settled prior to judgment)). Johns Manville opposes the Union's request for fees, contending that the "record before the Court does not reflect any bad faith, vexatious, or oppressive conduct by Johns Manville." Doc. 49 at 6.

Under the "American Rule," litigants must pay their own attorney's fees absent statute or enforceable contract. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). While 29 U.S.C. § 185 does not itself provide for an award of attorney's fees, a court may, in its discretion, award attorney's fees when "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Albemarle Corp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, ex rel. Loc. 6000*, No. 4:12-CV-3232, 2013 WL 5563703, at *6 (S.D. Tex. Oct. 8, 2013) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)).

After considering the record and the parties' arguments, the Court concludes that the record does not reflect bad faith. That the parties disagree as to whether the grievances filed by the Union are arbitrable does not mean that Johns Manville acted in bad faith or that its challenges were not without justification. Accordingly, the Union's request for attorney's fees is denied.

## IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 34, is **GRANTED**, and *Defendant's Motion for Summary Judgment*, Doc. 38, is **DENIED**. Arbitration is hereby **ORDERED,** and this matter is **DISMISSED with prejudice**.

**SO ORDERED** on May 23, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

10